# Union Metallic Cartridge Company v. Teague, Barnett & Co.

*Action on Common Counts, for Goods Sold and Delivered.*

1. *License tax on "dealers in . . pistol cartridges;" character of cartridges.*—The provision contained in the revenue law of December 11th, 1886, imposing a license tax on "dealers in pistols or pistol cartridges," &c. (Sess. Acts 1886–7, p. 36, § 5, subd. 17), includes pistol cartridges proper, as manufactured and used for pistols only, and "rifle and pistol cartridges," adapted for use and used both in rifles and pistols of the calibre now manufactured, but not "rifle cartridges" proper, which are used only in rifles, and are too large for use in pistols of the size now manufactured.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by the Union Metallic Cartridge Company, a foreign corporation, against Teague, Barnett & Co., a mercantile partnership doing business in the city of Montgomery; and was founded on an account for goods sold and delivered, consisting of cartridges, aggregating $882.67. The complaint contained the common counts, and a special count which set out a list of the articles sold, with the prices of each. The only plea was the general issue. On the trial, as appears from the bill of exceptions, "it was admitted and agreed that, about December 1st, 1886, plaintiff endeavored to sell to defendants, who were then engaged in the hardware business in the city of Montgomery, a bill of goods as set out in the special count of the complaint; that defendants then informed plaintiff that a bill was then pending in the General Assembly of Alabama, which, if it became a law, would require a high license of all persons engaged in selling such cartridges; that it was thereupon finally agreed between them, that defendants would purchase said bill of goods, provided no license would be required of dealers in such cartridges, or so much of said bill as they could sell and dispose of without a special license therefor as dealers in cartridges;" that the goods were shipped by plaintiffs, under this agreement, on the 1st March, 1887, and defendants refused to receive them, having been advised that they could not sell the same without paying a license of $300, as required

by section 5, subd. 17, of the amendatory revenue law approved December 11th, 1886.—Sess. Acts 1886-7, p. 36.　It was admitted and agreed, also, "that the cartridges included in said bill are of three kinds, or classifications—(1st) rifle cartridges, marked *R*, (2) rifle and pistol cartridges, marked *R. & P.*, and (3d) pistol cartridges, marked *P.;* that the rifle cartridges are at present only used in rifles, and will not fit in pistols, though pistols can easily and readily be made, whose barrels will receive such cartridges, and they can then be used and fired in such pistols; that the rifle and pistol cartridges, marked *R. & P.*, are at present used in both rifles and pistols, many of them being used more largely in rifles than in pistols, particularly those of No. 22, which are generally used in rifles in practice fire, and at rifle galleries, picnics, and at popular resorts and places of amusement; that the pistol cartridges, marked *P.*, are at present used only in pistols, but rifles can readily and easily be manufactured which will receive and fire such cartridges."

On these facts, the court charged the jury, on request of the defendant, that they must find for the defendants, if they believed the evidence.　The plaintiff excepted to this charge, and it is here assigned as error.

Shaver & Hutcheson, for appellant.

Thos. N. McClellan, *contra.*

SOMERVILLE, J.—The question presented by the agreed statement of facts, and the rulings of the City Court made upon them, involves the construction of sub-division 17 of section 5 of the Revenue Law, as amended by the act of December 11, 1886.—Acts 1886-87, p. 36.

This law imposes a license of three hundred dollars on "dealers in pistols, or *pistol cartridges*, or bowie-knives, or dirk knives, whether [constituting their] principal stock in trade or not."　The inquiry raised is, what was intended to come within the designation of "pistol cartridges."　The liability of the defendants is admitted to depend on this inquiry; for their contract was to buy so much of the bill of goods, consisting of rifle and pistol cartridges, as they could lawfully sell and dispose of *without a special license* therefor as a dealer in pistol cartridges, under this provision of the revenue law.

The thing to be ascertained is the intention of the law-

maker, this being the only proper function of judicial construction. To this end, it is permissible to consider the scope and object of the law, and the mischief to be remedied, if any. The license exacted is not for the sole purpose of revenue. It embraces within its object the idea, also, of a police regulation. It has long been the policy of our statutes to discourage the carrying of deadly weapons concealed about the person, and to visit this barbarous practice with severe penalties. The amount of the license imposed by this law will naturally tend to diminish the number of dealers in pistols and pistol cartridges, as well as in the other weapons mentioned, and, by lessening competition, will increase the price, and thereby impede the facility with which these articles can be purchased. This was the legislative intent, and it harmonizes with the general policy prohibitory of the abuse of the habit of secretly carrying and recklessly using such weapons, especially pistols.

By "pistol cartridges," therefore, we think the General Assembly meant, not merely such cartridges as are, or may hereafter be called pistol cartridges, but pistol cartridges in fact—such as are adapted to, and are or may be used, for pistols of the size and calibre in ordinary use—including especially those capable of being carried about the person. The name of the thing may be but a mere device, and amount to but little, as dealers have the power to name their own articles of traffic, and would be tempted to affix a spurious nomenclature in order to elude the law.—*Ryall's case,* 78 Ala. 410. The true criterion is the nature, the adaptability, and practical use of the article. The fact is significant, that dealers in rifle cartridges are not mentioned in the statute. Yet it is manifest that a pistol may be manufactured of sufficient size and calibre to cary a rifle cartridge. Should the habit of carrying or using such pistol hereafter prevail, it may be that they would fall within the evil intended to be regulated, and would thus be brought within both the letter and spirit of the law. They might, from the use actually made of them, become pistol cartridges, just as a table might become a gaming-table from its use and adaptability for that purpose.— *Wren's case,* 70 Ala. 1. But common knowledge suggests that, until some such change of circumstances ensues, dealers in cartridges used for rifles, and not used or capable of being used for pistols of the size now manufactured and in use, do not require a license. This construction practically meets the evil intended to be remedied.

It follows from these views: (1) That the defendants were not liable for the "pistol cartridges," which are shown to be used only in pistols of the size now manufactured, because they were liable to pay a license for dealing in these; (2) and for a like reason, they were not liable for the "rifle and pistol cartridges," which are shown to be used, and adapted to use for pistols, as well as rifles, of the calibre now manufactured; (3) they were liable, however, for the "rifle cartridges," which are shown to be used at present only for rifles, although capable of use in pistols of a larger size than those now made by manufacturers of such fire-arms. For dealers in such rifle cartridges, the statute requires no license.

The court erred in giving the general affirmative charge for the defendant; and the judgment must be reversed, and the cause remanded.